UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

LEIGH ANNE CHALLENDER and CINDY SHACKLETON, individually and on behalf of all others similarly situated,

    Plaintiffs,

    v.

ABBVIE INC.,

    Defendant.

Case No.

**CLASS ACTION COMPLAINT**

<u>**INTRODUCTION**</u>

1. Plaintiffs Leigh Anne Challender and Cindy Shackleton bring this action on behalf of themselves and other Ambassador Resource Specialists ("ARS's") who have worked for AbbVie, Inc. ("AbbVie"), a pharmaceutical company located at One North Waukegan Road, North Chicago, Illinois. As described further below, AbbVie employs Ambassador Resource Specialists, who provide customer service support over the telephone to patients taking AbbVie drugs; however, AbbVie misclassifies these workers as independent contractors rather than employees. Ambassador Resource Specialists sometimes earn less than minimum wage, do not receive overtime pay, and are not paid for mandatory trainings.

2. Plaintiffs bring this action on their own behalf, and on behalf of all other AbbVie Ambassador Resource Specialists who may choose to opt in to this case, for failure to pay minimum wage and overtime and failure to compensate Ambassador Resource Specialists for all hours worked including mandatory trainings as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq*.

I. **PARTIES**

3. Plaintiff Leigh Anne Challender is an adult resident of Union City, Tennessee. She began working for AbbVie as an Ambassador Resource Specialist in November 2018. She worked exclusively as an Ambassador Resource Specialist for AbbVie from November 2018 until September 2019.

4. Plaintiff Cindy Shackleton is an adult resident of Lansdale, Pennsylvania. She began working for AbbVie as an Ambassador Resource Specialist in October 2016. She worked exclusively as an Ambassador Resource Specialist for AbbVie from October 2016 until May 2019.

5. Defendant AbbVie is a Delaware corporation with its principal place of business at One North Waukegan Road, in North Chicago, Illinois.

II. **JURISDICTION AND VENUE**

6. This Court has general federal question jurisdiction over this action pursuant to 28 U.S.C. § 1331 as the plaintiffs have brought a claim pursuant to the federal Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the Defendant is located within this judicial district and division.

III. **STATEMENT OF FACTS**

8. AbbVie is a pharmaceutical company that develops, manufactures, and markets popular drugs such as Humira and Skyrizi. AbbVie provides patient support services for customers taking certain AbbVie medications through programs referred to herein as "Complete Programs." The Complete Programs help patients navigate insurance coverage for the drug, schedule trainings to teach patients how to inject the drug and to safely dispose of needles and

syringes, and to help patients re-order and pay for the drug. These programs include HUMIRA Complete, SKYRIZI Complete, and RINVOQ Complete.

9. Ambassador Resource Specialists ("ARS") are part of AbbVie's Complete Programs.

10. ARS's cover inbound and outbound telephone calls to patients who use AbbVie prescription drugs specific to their assigned Complete Program. ARS's call patients to ask about their experience with the drug, to help answer any questions they may have, and to assist them in obtaining more of the drug as needed. Ambassador Resource Specialists are part of a more comprehensive program offering free services to patients and medical providers who use AbbVie prescription drugs. For example, when a patient begins using the anti-arthritic drug Humira, a Nurse Ambassador Specialist sometimes visits the new patient in person to offer instruction and assistance regarding the proper use and injection technique for the drug. After this initial visit, Ambassador Resource Specialists like Plaintiffs will periodically call the patient to check in, to answer any questions, and to help the patient obtain more Humira as needed.

11. AbbVie has misclassified its Ambassador Resource Specialists as independent contractors when in reality they are employees of AbbVie.

12. AbbVie—along with LiveOps, a telemarketing platform that contracts directly with Plaintiffs—is the joint employer of Ambassador Resource Specialists like Plaintiffs Challender and Shackleton. AbbVie and LiveOps are not completely disassociated with respect to the employment of Ambassador Resource Specialists, and AbbVie should therefore be considered their joint employer.

13. AbbVie associates itself closely with the employment of Ambassador Resource Specialists through LiveOps. Ambassador Resource Specialists work in "departments", which are organized according to which AbbVie drug they are assigned to promote. AbbVie managers closely monitor the progress of these departments and impose specific requirements on Ambassador Resource Specialists through managers affiliated with LiveOps. For example, Plaintiffs Challender and Shackleton were assigned to the department responsible for the drug Humira and had to adhere to rules and specifications set by AbbVie, as discussed below. Ambassador Resource Specialists use AbbVie email addresses and employee profiles, provide patient support services in close coordination with AbbVie employees, attend conferences geared toward AbbVie employees, and are instructed to hold themselves out as employees of AbbVie.

14. AbbVie has exercised extensive control over the manner in which its Ambassador Resource Specialists perform their jobs and conduct themselves while communicating with patients. For example, AbbVie keeps a "Quality Assurance" scorecard of performance metrics for Ambassador Resource Specialists, and it sets parameters for ARS's performance in its discretion. AbbVie requires Ambassador Resource Specialists to make calls during a minimum number of shifts (referred to as "commits") on a weekly and monthly basis. AbbVie requires a specific level of use of supplemental communication channels such as using AbbVie pre-written emails, which are sent to clients as follow-up, in addition to calling clients.

15. AbbVie expects Ambassador Resource Specialists to be available to make additional calls when there is a staffing shortage, and it requires Ambassador Resource Specialists to follow a specific "communication strategy" by making contact with newly assigned patients within a single business day. If an ARS is told to perform another ARS's work (due to that staffer being out), the ARS is required to prioritize the other ARS's tasks and

complete them, prior to beginning their own. AbbVie retains the power to instruct ARS's to reschedule their client calls, for example when the AbbVie platform is down. AbbVie also requires Ambassador Resource Specialists to stop what they are doing when they receive a "hot list" message about contacting a new patient and requires ARS's to immediately prioritize contacting the new patient. AbbVie requires that ARS's return voicemails from patients as soon as possible and no later than within 24 hours; if ARS's did not return a voicemail they would be reprimanded or disciplined.

16. AbbVie requires Ambassador Resource Specialists to include a photo in their AbbVie profiles, which appears when an ARS emails a patient. AbbVie requires professional photos and retains the power to reject photos deemed unprofessional; AbbVie provides a professional photographer at conferences for ARS's to obtain AbbVie profile pictures. Patients also see the ARS's name listed as their "Ambassador" when logged into the app or online portal, thus holding the ARS out to the patient as an AbbVie representative.

17. AbbVie requires Ambassador Resource Specialists to run reports at specified intervals, and it measures Ambassador Resource Specialists' success through metrics such as their "burn rate" (the percentage of patients assigned to an Ambassador Resource Specialist who are actually called). AbbVie instructs Ambassador Resource Specialists regarding how many patient calls to schedule during a shift, and it reviews ARS's individual patient calls and overall performance records for dozens of possible infractions that it refers to as "compliance events."

18. AbbVie retains the power, in coordination with LiveOps, to hire and fire Ambassador Resource Specialists, and AbbVie has disciplined Ambassador Resource Specialists who do not comply with AbbVie's requirements regarding the manner and means of their work or who do not meet AbbVie's performance expectations. Specifically, AbbVie closely monitors

5

the performance of Ambassador Resource Specialists and coordinates their suspension or termination for infractions with LiveOps. Ambassador Resource Specialists receive "bonuses" that partially compensate them for time spent on tasks other than speaking with patients on the telephone, but they are denied this "bonus" pay if they commit infractions such as failing to work enough shifts ("commits") in a monthly period, spending too much time per patient call on average, or receiving critical "feedback" from AbbVie more than four times in relation to any nonconformity with its rules.

19. At all relevant times, Ambassador Resource Specialists have not held themselves out to be in business for themselves. Instead, Ambassador Resource Specialists are economically dependent on their relationship with AbbVie for their earnings.

20. In addition, AbbVie is in the business of providing prescription drugs to its customers. Patients require ongoing assistance in the use and replenishment of their prescription drugs, resulting in AbbVie's need for Ambassador Resource Specialists to assist patients with these issues. Thus, Ambassador Resource Specialists perform services in the usual course of AbbVie's business.

21. At all times relevant to this complaint, AbbVie has treated Plaintiffs and other Ambassador Resource Specialists in a substantially similar manner with respect to their policies and practices.

22. At all relevant times the federal minimum wage has been $7.25 per hour.

23. AbbVie did not pay Ambassador Resource Specialists the prevailing minimum wage for all hours worked.

24. AbbVie primarily compensated ARS's in "talk time," meaning ARS's were paid on a per-minute basis for time spent talking on the telephone with clients. ARS's also received "bonuses" contingent on quotas for their other assigned tasks but were otherwise not compensated for "non-talk time" on the telephone or time spent on administrative tasks.

25. AbbVie did not pay Ambassador Resource Specialists overtime for hours worked beyond 40 per week.

26. For example, during the Open Enrollment months, Plaintiff Challender consistently worked over 40 hours a week and was not paid an overtime premium. Plaintiff was required to call patients once a month for the three months leading up to their open enrollment, and was required to make an extremely high volume of calls during the Open Enrollment periods for Medicare/Medicaid, Blue Cross Blue Shield, Humana, United Healthcare, FEHB Insurance, and any state insurance program.

27. In order to perform their job, Ambassador Resource Specialists were required to attend trainings for which they were not paid.

28. ARS's are required to complete an initial training, prior to beginning the position. Initial training consists of approximately six-hours of online learning per day and lasts between four and five weeks. The majority of the training is focused on AbbVie-specific material; the ARS's receive an AbbVie certification upon successful completion and use the AbbVie learning center for a portion of the training. ARS's are not compensated for time spent training until and unless the ARS begins work in the position, and then only receive a $400 bonus in recognition of the hours spent training.

7

29. ARS's are subject to AbbVie certification requirements (ARS's were subject to the same training requirements as AbbVie drug representatives). ARS's are required to complete ongoing training on specific AbbVie medication, use the AbbVie learning center to complete the trainings and quizzes, and are awarded AbbVie certifications. These trainings are purportedly compensated on a per-minute basis.

30. ARS's also have weekly training via online conference, wherein AbbVie leaders will speak to a group regarding ARS performance.

31. ARS's are required to attend semi-annual national AbbVie conferences, for which they only receive a $350–$400 bonus.

## IV. CLASS AND COLLECTIVE ALLEGATIONS

32. Plaintiffs bring this action individually and as a collective action pursuant to 29 U.S.C. § 216(b), on behalf of a class of all individuals who worked as Ambassador Resource Specialists for AbbVie via the LiveOps platform at any time between three years before the filing of this lawsuit and the entry of judgment in this case, who may choose to "opt in" to join this lawsuit.

33. Plaintiffs attach as Group Exhibit A, their Notices of Consent to Become a Party Plaintiff in a Collective Action under the Fair Labor Standards Act.

## COUNT I
**Failure to Pay Minimum Wage, Overtime, and Compensation for All Hours Worked in Violation of the FLSA**

34. Defendant AbbVie is an "employer" for purposes of the Fair Labor Standards Act, 29 U.S.C. § 203(s), because it has annual gross sales or business of at least $500,000 and has employees engaged in interstate commerce as it is an enterprise whose employees engage in commerce, including the development and sale of prescription drugs.

35. Plaintiffs and the members of the proposed class were employees of AbbVie for purposes of the Fair Labor Standards Act during all times relevant to this Complaint. AbbVie has failed to pay Plaintiffs and the members of the proposed class at an hourly rate of at least the federal minimum wage of $7.25 per hour as required by the FLSA, 29 U.S.C. § 206(a)(1)(C).

36. AbbVie has also failed to pay overtime equal to one-and-a-half times their regular compensation for hours worked past 40 as required by the FLSA, 29 U.S.C. § 207(a)(1).

37. Finally, by requiring Ambassador Resource Specialists to attend trainings for which they were not paid, AbbVie has failed to pay them for all hours worked in violation of the FLSA, 29 U.S.C. § 206(a)(1)(C).

38. Plaintiffs and the members of the proposed class are entitled to back wages at the minimum wage rate of $7.25 per hour for every hour worked, pursuant to the FLSA, 29 U.S.C. § 206(b).

39. The failure of AbbVie to ensure that Plaintiffs and the members of the class received at least minimum wage for all hours worked, its failure to pay overtime, and its failure to compensate them for required training was knowing, willful, intentional, and done in bad faith. AbbVie knew or should have known that Plaintiffs and other Ambassador Resource Specialists, performing the same job functions, were being improperly misclassified as independent contractors given the centrality of Ambassador Resource Specialists to their business and the level of control AbbVie exercised over their work.

40. Plaintiffs and the members of the proposed class are entitled to liquidated damages equal to the amount of unpaid minimum wages due to them under the FLSA, pursuant to the FLSA, 29 U.S.C. § 206(b). Plaintiffs and the members of the proposed class are also

entitled to liquidated damages equal to the amount of unpaid overtime pay due to them under the FLSA, pursuant to the FLSA, 29 U.S.C. §207(a)(1).

WHEREFORE, Plaintiffs request that the Court enter the following relief:

a. An order authorizing the sending of appropriate notice to current and former employees of AbbVie who are potential members of the collective action under the Fair Labor Standards Act, giving them the opportunity to opt in to this action;

b. A declaratory judgment that Defendant has willfully and in bad faith violated the minimum wage and overtime provisions of the FLSA, and has deprived Plaintiffs and the members of the class of their rights to such compensation;

c. A declaratory judgment that the Plaintiffs and class members are employees, not independent contractors under the FLSA;

d. An order requiring Defendants to provide a complete and accurate accounting of all the wages to which Plaintiffs and members of the class are entitled;

e. An award of monetary damages to Plaintiffs and members of the class in the form of back pay for unpaid minimum wages and overtime, together with liquidated damages in an equal amount under the FLSA;

f. An award of damages for all wages that may be due to any other members of the class because of their misclassification as independent contractors and failure to receive all wages due to them under the law of any other state;

g. Attorneys' fees and costs; and

h. An award of prejudgment interest on the unpaid wages;

     i.   Such further relief as the Court deems just and proper.

Dated: December 24, 2019         Respectfully submitted,

                                      LEIGH ANNE CHALLENDER and CINDY SHACKLETON, individually and on behalf of all others similarly situated,

                                      /s/ Bradley Manewith
Bradley Manewith IARDC No. 06280535
Marc Siegel, IARDC No. 06238100
SIEGEL & DOLAN LTD.
150 North Wacker Drive, Suite 1100
Chicago, IL 60606
Tel. (312) 878-3210
Fax (312) 878-3211
Email: bmanewith@msiegellaw.com;
msiegel@msiegellaw.com

Harold Lichten, *pro hac vice anticipated*
Adelaide Pagano, *pro hac vice anticipated*
Anastasia Doherty, *pro hac vice anticipated*
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel. (617} 994-5800
Fax (617) 993-5801
Email: hlichten@llrlaw.com;
apagano@llrlaw.com;
adoherty@llrlaw.com